IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ CARLOS JIMÉNEZ-FRANCESCHINI,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER BENTLEY, ET AL.,<br><br>Defendants. | CIV. NO.: 12-1504(ADC/SCC) |

**REPORT AND RECOMMENDATION**

The presiding district judge has referred to the undersigned, for a report and recommendation, the matter of Plaintiff José Carlos Jiménez-Franceschini's citizenship and whether diversity jurisdiction exists in this case. *See* Docket No. 183, at 29. Pursuant to the presiding judge's Order, *id.*, a hearing was held on June 30, 2014. Below, we rehearse the facts found at that hearing and explain why we think diversity jurisdiction exists here.

**I.  Factual Background**

At an evidentiary hearing held on June 30, 2014, Jiménez testified on his own behalf, and a substantial amount of documentation was introduced through him. Defendants offered no witnesses, and neither did they introduce any evidence.[1]

Jiménez moved from Puerto Rico to New York in 2002, when he began college at Cornell University. He graduated college in 2007 and then moved to New York City, where he has lived and worked since. He has had a New York driver's license since at least 2010. *See* P.'s Exh. 5 (driver's license issued October 29, 2010). Jiménez's first job in New York City was with an architecture firm called Rodríguez Studio Architecture, where he worked in a full-time position. Jiménez left Rodríguez Studio Architecture in 2011 and began working at Clodagh Design International in another full-time position. Jiménez continues to work at Clodagh today. Furthermore, Jiménez has been filing New York State income tax returns

---

1. We note here that the evidence adduced at the hearing differs in some ways from the evidence adduced at the motion to dismiss stage and previously considered by the Court. *See* Docket No. 183, at 24–28. The recommendation made below is based solely on the hearing evidence.

since 2007.[2] *See* P.'s Exh. 9 (New York State tax returns from 2007 until 2012). The returns show a steady increase in income since Jiménez's graduation from college, reflecting a full-time wage. According to Jiménez's hearing testimony, his current income is over $80,000.

While working in New York City, Jiménez is also making progress towards obtaining an architecture license. As he explained it during the hearing, receiving a license requires passing seven tests, but these tests cannot be taken until after the applicant has worked full time for several years in the architectural field. Jiménez completed this practical component of the permitting process in 2011 and is now taking the tests, five of which he has passed. The license that he is working toward will permit him to practice in New York and no other jurisdiction. Jiménez testified that in addition to his work at

---

2. At the hearing, Defendants objected to the admissibility of Jiménez's tax returns on the grounds that they were not properly authenticated. According to Defendants' counsel, the returns were public documents and, therefore, needed to be either certified copies or Jiménez needed to have put the documents' custodian on the stand. *See* FED. R. EVID. 901(b)(7). Defendants' objection was rejected because the returns were filed personally by Jiménez, whose testimony was sufficient to vouch for their authenticity. *See* FED. R. EVID. 901(b)(1) (providing that a document may be authenticated by the testimony of a witness with knowledge of the document).

JIMENEZ-FRANCESCHINI v. BENTLEY                                                          Page 4

Clodagh International, he also freelances with a business partner; Jiménez and his business partner intend to eventually open a practice in New York City. Furthermore, and also related to his stated intention to practice architecture in New York, Jiménez has previously been a member of the New York chapter of the American Institute of Architecture. However, Jiménez let that membership lapse after leaving his job with Rodríguez Studio Architecture in 2011, because he could not afford the membership fees. It is not clear whether he has since renewed the membership.

Jiménez has lived in Brooklyn since moving to New York City in 2011, but he has lived in a number of different apartments. He explained during the hearing that he has moved frequently because renting in New York City is very expensive and, moreover, landlords tend to significantly raise tenants' rents after one year. He has had to move regularly, then, to stay in places he can afford. Nonetheless, Jiménez got married on June 2, 2012, in New York City. His wife moved from California to New York to live with him. She recently graduated from college in New York City and is looking for jobs there. Jiménez testified that they intend to remain there, because she works in the art field, and there are more jobs in

JIMENEZ-FRANCESCHINI v. BENTLEY                                                        Page 5

that field in New York City than elsewhere. The two make a home together in New York City, where they have two pets. Furthermore, Jiménez's wife is afraid of flying and has never been to Puerto Rico.

Jiménez voted in the 2010 election in New York City, though he does not remember who the candidates were or the precise location of the polling place. He testified that he does not have a voter registration card because New York does not issue such cards.[3] He admitted to having no membership in any political party. Jiménez has had a credit card issued by a New York bank since 2009. *See* P.'s Exh. 1 (credit card billing statements for a period beginning in May 2012).

Finally, Jiménez testified that he owned no property or vehicles in New York and that he did not have any brokerage account there or a club, gym, or church membership. He explained, however, that he could not afford to own real property in New York City. He uses a cell phone with a Puerto Rico phone number, which he has had for more than a decade and for which his father pays. He previously had a joint bank

---

3. The court takes no position on whether this statement is an accurate reflection of the state of New York elections practice, as the parties offered no evidence on the question.

account with his father, from which he would regularly withdraw money. That account is now closed, but he doesn't remember precisely when that happened. He also at one point used his father's American Express card for emergencies, but he testified that he had quit doing so before June 2012. In 2012, he was in Puerto Rico three times, one of which trips was for depositions related to this case, and each trip lasted fewer than five days. Since 2012, he has been here even less frequently, because his wife does not like traveling.

## II. Analysis

In a diversity jurisdiction inquiry, "citizenship usually is equated with domicile." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001). A person is domiciled where he "has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988). Thus, domicile "requires both physical presence in a place and the intent to make that place one's home." *Valentin*, 254 F.3d at 366. Because a person "can only have one domicile," it is necessary that "both residency and the intent to sustain that residency coexist." *Id.* at 367.

The First Circuit has identified a number of pieces of

| JIMENEZ-FRANCESCHINI v. BENTLEY | Page 7 |
|---|---|

evidence—which it has referred to as the *Bank One* factors—as helpful to determining a person's domicile. *See Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 32–33 (1st Cir. 2011) (citing *Bank One, Tex., N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992)). These factors include where a person "exercises civil and political rights, pays taxes, has real and personal property, has a driver's license or other license, has bank accounts, has a job or owns a business, attends church, and has club memberships." *Id.* A party need not satisfy all of these factors, *id.* at 33, nor is any single one of them dispositive, *see Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (1st Cir. 2010). Instead, a court looks at the totality of the factors in an effort to ascertain the party's intent. *Tanon v. Muñiz*, 312 F. Supp. 2d 143, 149 (D.P.R. 2004). Nonetheless, the location where a person votes, *see Lundquist v. Precision Valley Aviation, Inc.*, 946 F.3d 25, 41 (1st Cir. 2010) (noting "that the place that a person is registered to vote is a 'weighty' factor"), as well as where he resides—especially with a spouse, *see* 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3612 (3d ed.) (noting that a person's residence is presumed to be his domicile, and that "a married man is presumed to be domiciled where his wife and family

| JIMENEZ-FRANCESCHINI v. BENTLEY | Page 8 |
|---|---|

live")—are considered especially important.[4]

Applying these factors to the present facts, we find that the evidence in favor of Jiménez's domicile in New York is overwhelming.[5] He had lived in that state for more than a decade at the time the complaint was filed in June 2012. For at least five of those years, moreover, he had lived in Brooklyn

---

4. As a general matter, courts recognize "a presumption of continuing domicile." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008). That presumption is most often invoked in cases where the plaintiff changes his supposed domicile around the same time that he files the complaint. *See, e.g., id.* at 32 (plaintiff had allegedly changed his domicile soon before filing a complaint); *Tanon v. Muñiz*, 312 F. Supp. 2d 143 (D.P.R. 2004) (similar). It is doubtful, however, that such a presumption would apply to a person, like Jiménez, who has spent more than a decade living and working outside of his "home" jurisdiction, especially given the competing presumptions that a person is domiciled where he works and lives with his spouse. It is unnecessary to resolve this question, however, because the court considers the same evidence in any case.

5. Certain evidence presented at the hearing, including electricity and cable bills, tax returns, and Jiménez's testimony about passing his licensure examinations, concerns events that occurred after the filing of the complaint in this case, and Defendants objected to the admissibility of such evidence on those grounds. Defendants' objection is rejected, however, because post-complaint events "may bear on the sincerity of a professed intention to remain." *Garcia-Perez v. Santaella*, 364 F.3d 348, 350–51 (1st Cir. 2004). Here, "[p]ost-complaint events cast no doubt on the earnestness of [Jiménez's] intent," *Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 33 (1st Cir. 2011); to the contrary, they only confirm it.

and worked a full-time job. He voted and paid taxes in New York, and he held a New York driver's license. He is married to and lives with a woman in New York who has herself never even visited Puerto Rico, and he credibly testified that they intended to make their life there. He has spent several years working to obtain a professional license that will permit him to practice in New York alone, and the Court believed his testimony that he intends to open an architecture practice there.

On the other hand, apart from the fact that he lived in Puerto Rico until he left for college in 2002, there is essentially no evidence that Jiménez remains domiciled here. Considering that Jiménez resides in New York City—by and large a city of renters and riders of public transportation—the fact that he owns neither real property nor a car there is not helpful. More helpful is the fact that New York is where he keeps his personal property, not to mention where his wife and pets live. Likewise, the fact that Jiménez is not the member of any clubs or churches in New York City, in the face of the other evidence adduced, is not helpful to Defendants. After all, neither is there evidence that Jiménez has any such memberships or affiliations

JIMENEZ-FRANCESCHINI v. BENTLEY                                          Page 10

in Puerto Rico. These factors are a wash.[6] Similarly, the fact that Jiménez's father pays for his phone, like other evidence of parental support, might well be useful in showing a continued domicile in Puerto Rico, but only alongside other, stronger evidence, none of which exists here. The fact that Jiménez lived in Puerto Rico more than a decade ago and is still using a Puerto Rico phone number is simply not enough for Defendants' arguments to prevail.

Lastly, we reject Defendants' attempt to invoke in this case the presumption that a student going to school out of state is domiciled in his home state. *See* 13E WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3619 (explaining that "out-of-state students generally have been viewed as temporary residents who are located in the state where their school is located only for the duration and for the purpose of their studies"). First of all, that presumption may be refuted by

---

**6.** So too would be the voting factor, if Defendants had successfully shown that Jiménez had not voted in New York. There was no evidence that he was registered to vote in Puerto Rico, either, much less was there evidence of actual voting here. A person's decision to register to vote in a certain place may well be good evidence of domicile, but the fact is that the majority of Americans do not vote at all. As such, the lack of any voter registration in any jurisdiction is of very little use in determining domicile one way or the other.

evidence—like the evidence discussed above—showing that the person has in fact established a new domicile outside his home state. *See, e.g.*, *Thomas v. Farmer*, 148 F. Supp. 2d 593, (D. Md. 2001) (holding that the defendant was domiciled in the state where he was in college where, *inter alia*, he was past the age of typical college students, married, and residing out of state). More to the point, Jiménez has been full-time employed—and not a student—since 2007. At the hearing, Defendants tried to characterize Jiménez's positions as internships, but this question of nomenclature is beside the point;[7] what matters is that Jiménez graduated from school and took positions that, regardless of their title, required full-time hours and paid a full-time wage. Jiménez has thus unquestionably been working in New York since 2007, and he has been working, moreover, towards getting a New York architecture

---

7. Defendants failed to offer any evidence that Jiménez's positions were internships, a characterization that Jiménez strenuously rejected. But even if Jiménez's positions were internship-like, in the sense that they provided a training component necessary for his eventual licensure, the length of his tenure and the wages earned suggest that they were also jobs in the typical sense. Moreover, Defendants have cited no cases for the proposition that long-term, paid, post-graduate internships, especially ones leading to licensure in a specific jurisdiction, are an appropriate basis on which to invoke the out-of-state student presumption.

license. He has thus been residing in New York during those years, and has a clear intention to remain there. Even were the out-of-state student presumption applicable, therefore, it would be rebutted.

### III.   Conclusion

For the reasons stated above, we RECOMMEND that the presiding judge find that Plaintiff José Carlos Jiménez-Franceschini is a citizen of New York, and that, therefore, diversity jurisdiction exists in this case.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 2nd day of July, 2014.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE